# Exhibit H

Contract Number: NCM437425
Version Number: 2                                                                                                                         1 of 38

**FOIA NOTICE:** This document contains Express Scripts, Inc. proprietary information and/or data. Recipient, by accepting this document, agrees that it will not duplicate, use, or disclose-in whole or in part-this document, or the information contained therein, or any part thereof to others for any other purpose except as specifically authorized in writing by Express Scripts, Inc. EXEMPT FROM PUBLIC DISCLOSURE: Information contained herein is confidential information of Express Scripts, Inc. and is exempt from public disclosure under 5 U.S.C. §552 (b). Do not disclose outside of the recipient organization of the United States Government.

NO ALTERATIONS TO THIS DOCUMENT SHALL BE BINDING UNLESS INITIALED BY DULY AUTHORIZED REPRESENTATIVES OF PROVIDER AND ESI.

## PSAO SERVICES AGREEMENT

**THIS PSAO SERVICES AGREEMENT** (the **"Agreement"**) is entered into as of the Effective Date set forth in Section 1.1, by and between Express Scripts, Inc., a Delaware corporation, on behalf of itself and Medco Health Solutions, Inc. (together, **"ESI"**) and **Health Mart Atlas, LLC AS ATTORNEY-IN-FACT ON BEHALF OF ITS PARTICIPATING PHARMACIES**, PSAO Code 630 and 841, a wholly owned subsidiary of the McKesson Corporation organized under the laws of the state of Delaware (the **"PSAO"**).

## RECITALS

**WHEREAS**, PSAO is a pharmacy services administrative organization authorized to act on behalf of PSAO Pharmacies (as defined in Section 1.2) to negotiate network participation terms and conditions that PSAO deems appropriate, including, but not limited to, reimbursement rates and other participation obligations, with third-party payors; and

**WHEREAS**, ESI is a pharmacy benefit manager responsible for, among other things, negotiating with pharmacies to provide access to prescription drugs and discounts to Members; and

**WHEREAS**, ESI desires to contract with PSAO for the PSAO to provide certain Services (as defined in Section 1.4) to ESI and PSAO desires to contract with ESI itself, to provide the Services required by ESI and on behalf of its PSAO Pharmacies, to allow its PSAO Pharmacies to participate in ESI's applicable networks, all as more specifically set forth in this Agreement; and

**WHEREAS**, the PSAO has, with ESI, an existing services agreement ("**Existing PSAO Base Agreement**") which includes a base pharmacy agreement ("**Existing Base Pharmacy Agreement**"), exclusive of rate sheets (the applicable Exhibit As or schedules), as amended by all amendments and addenda thereto, that shall be replaced and superseded by this Agreement and the PSAO Provider Agreement, respectively (as defined in the next WHEREAS clause); and

**WHEREAS**, in accordance with the parties' intentions: (i) the parties desire to enter into this Agreement to clearly identify the Services performed by the PSAO; (ii) the parties have negotiated and agreed upon, on behalf of the PSAO Pharmacies, the Express Scripts, Inc. Pharmacy Provider Agreement (the "**PSAO Provider Agreement**") set forth in **Schedule 1**, attached hereto and incorporated herein by this reference, including the rate sheets attached thereto which, as applicable, shall supersede and replace outdated rate sheet(s) covering the same network(s) attached to the Existing Base Pharmacy Agreement; and (iii) such PSAO Provider Agreement shall govern PSAO Pharmacies' participation in ESI's networks so long as such PSAO Pharmacies are affiliated with PSAO; all as of the Effective Date (as defined in Section 1.1) of this Agreement.

**NOW, THEREFORE**, in consideration of the premises and the mutual promises and covenants herein contained, the parties hereto agree as follows:

## TERMS OF AGREEMENT

1.  **DEFINITIONS.** Capitalized terms used herein but not defined herein or elsewhere in this Agreement shall have the meaning ascribed to them in the PSAO Provider Agreement.

    1.1  **"Effective Date"** shall mean the date upon which ESI executes this Agreement as set forth on the signature page of this Agreement.

    1.2  **"PSAO Pharmacy"** and **"PSAO Pharmacies"** shall mean open door Retail Providers (as defined in Section 1.3), contracted with the PSAO authorizing the PSAO to act on behalf of such PSAO Pharmacy pursuant to

THIS DOCUMENT CONTAINS CONFIDENTIAL INFORMATION PROTECTED FROM PUBLIC DISCLOSURE UNDER 5 U.S.C. § 552 (b).

PLEASE READ THE FULL "FOIA NOTICE" ON THE SIGNATURE PAGE AND/OR THE FIRST PAGE OF THIS DOCUMENT.

4089773.v1

Version Number: 2

Contract Number: NCM437425

13 of 38

## [SIGNATURE PAGE TO THE PSAO SERVICES AGREEMENT]

IN WITNESS WHEREOF, the parties have executed and entered into this Agreement as of the date set forth below.

**ACCEPTED:**

| HEALTH MART ATLAS, LLC<br>AS ATTORNEY-IN-FACT<br>ON BEHALF OF ITS PARTICIPATING<br>PHARMACIES | EXPRESS SCRIPTS, INC. |
|---|---|
| Signature: _[signature]_ Y.F. | Signature: _[signature]_ |
| Printed Name: Eyad Farah | Angela Adler, Vice President and General Manager |
| Title: VP/GM, Health Mart Atlas | Retail Network Management |
| Date: 06/08/2018 | Date: 06/08/2018 |
| Chain Code: 630, 841 | |
| Contract No.: NCM437425 | |

DIVERSIFIED IPA (NY), INC.

Signature: _[signature]_

Angela Adler, Vice President and General Manager

Retail Network Management

Date: 06/08/2018

[Stamp: APPROVED AS TO LEGAL FORM — LEGAL DEPT. — KP]

THIS DOCUMENT CONTAINS CONFIDENTIAL INFORMATION PROTECTED FROM PUBLIC DISCLOSURE UNDER 5 U.S.C. § 552 (b). PLEASE READ THE FULL "FOIA NOTICE" ON THE SIGNATURE PAGE AND/OR THE FIRST PAGE OF THIS DOCUMENT.
4089773.v1

# SCHEDULE 1
## PSAO Provider Agreement

See attached.

THIS DOCUMENT CONTAINS CONFIDENTIAL INFORMATION PROTECTED FROM PUBLIC DISCLOSURE UNDER 5 U.S.C. § 552 (b).
PLEASE READ THE FULL "FOIA NOTICE" ON THE SIGNATURE PAGE AND/OR THE FIRST PAGE OF THIS DOCUMENT.
4089773.v1

Contract Number: NCM437425

Version Number: 2

15 of 38

## SCHEDULE 2

## PSAO Pharmacy Affiliation Authorization

The undersigned pharmacy ("Provider") acknowledges and agrees that it has provided to _____ ("**PSAO**") all right and authority to act on its behalf to negotiate terms and conditions, including, but not limited to, reimbursement rates, PSAO deems appropriate for Provider to participate as a pharmacy in the network of open-door retail pharmacies created by Express Scripts, Inc. (**"ESI"**). Provider agrees to abide by all terms and conditions set forth in the agreements presented to PSAO by ESI including, but not limited to, the PSAO Pharmacy Provider Agreement (the "PSAO Provider Agreement").

Provider acknowledges that (i) PSAO and ESI have entered into that certain PSAO Services Agreement (the "**Services Agreement**") pursuant to which PSAO has agreed to perform certain services for ESI and (ii) in the event the Services Agreement is terminated for any reason, ESI shall have the right, but not the obligation, to terminate the PSAO Provider Agreement upon written notice to Provider.

By executing this PSAO Pharmacy Affiliation Authorization, the undersigned: (i) understands and agrees that the terms and conditions of the PSAO Provider Agreement, inclusive of rate sheets, shall govern Provider's participation in ESI's networks; except, that any existing rate sheet(s) negotiated by Provider on behalf of itself, which are not replaced, may transfer and continue to be applicable under the PSAO Provider Agreement at ESI's sole discretion; (ii) represents that he/she has the authority to, and by signing below hereby does, bind Provider to the terms and conditions set forth in the PSAO Provider Agreement, including (a) the obligation to look solely to ESI for payment for Covered Medications (except for Member Copayments), and (b) compliance with the ESI Provider Manual; (iii) agrees that the rates, terms and conditions included in the PSAO Provider Agreement represent Confidential Information and must not be disclosed to entities which are not the Provider or PSAO; (iv) authorizes PSAO to negotiate amendments/addenda to the PSAO Provider Agreement and hereby agrees to comply with any such terms and conditions contained therein as if negotiated directly by Provider; and (v) understands and agrees that ESI shall invoice Provider for, or automatically deduct from Provider's future remittance, at ESI's discretion, a nonrefundable processing fee for each PSAO affiliation or affiliation change request.

**ACCEPTED by duly authorized representative:**

PSAO Chain Code: _____

NCPDP #: _____

Pharmacy Name: _____

Signature: _____

Printed Name: _____

Title: _____

Date: _____

THIS DOCUMENT CONTAINS CONFIDENTIAL INFORMATION PROTECTED FROM PUBLIC DISCLOSURE UNDER 5 U.S.C. § 552 (b).

PLEASE READ THE FULL "FOIA NOTICE" ON THE SIGNATURE PAGE AND/OR THE FIRST PAGE OF THIS DOCUMENT.

4089773.v1

**FOIA NOTICE:** This document contains Express Scripts, Inc. proprietary information and/or data. Recipient, by accepting this document, agrees that it will not duplicate, use, or disclose-in whole or in part-this document, or the information contained therein, or any part thereof to others for any other purpose except as specifically authorized in writing by Express Scripts, Inc. EXEMPT FROM PUBLIC DISCLOSURE: Information contained herein is confidential information of Express Scripts, Inc. and is exempt from public disclosure under 5 U.S.C. §552(b). Do not disclose outside of the recipient organization of the United States Government.

NO ALTERATIONS TO THIS DOCUMENT SHALL BE BINDING UNLESS INITIALED BY DULY AUTHORIZED REPRESENTATIVES OF PROVIDER AND ESI.

## EXPRESS SCRIPTS, INC. PHARMACY PROVIDER AGREEMENT

**THIS EXPRESS SCRIPTS, INC. PHARMACY PROVIDER AGREEMENT** (the "Agreement") is made and entered into as of the Effective Date (as defined in Section 1.2), by and between Express Scripts, Inc., a Delaware corporation, on behalf of itself and Medco Health Solutions, Inc. (together, "ESI") and the PSAO Pharmacies (each, a "Provider") pursuant to the PSAO Services Agreement entered into by ESI and HEALTH MART ATLAS, LLC AS ATTORNEY-IN-FACT ON BEHALF OF ITS PARTICIPATING PHARMACIES (the "PSAO" or "Agent of Pharmacy"), PSAO Code 630,841, on behalf of its member pharmacies. For purposes of clarity, this Agreement shall be between ESI and each PSAO Pharmacy as if each PSAO Pharmacy has signed a copy hereof. As required by the New York State Department of Health, solely with respect to services rendered in the state of New York under this Agreement to any Member of any Prescription Drug Program offered by a Sponsor, as such capitalized terms are herein defined, which is certified as a managed care organization under Article 44 of the New York State Public Health Law, Diversified NY, IPA, Inc. ("IPA"), a corporation and wholly-owned subsidiary of Express Scripts, Inc. (together with IPA, "ESI"), shall be a party to this Agreement.

## RECITALS

**WHEREAS**, ESI administers and manages Prescription Drug Programs for its Sponsors (as defined in Sections 1.5 and 1.9 of this Agreement, respectively), which programs include claims administration, mail service dispensing and other pharmacy benefit management services; and

**WHEREAS**, in order to fulfill its service obligation to its Sponsors, ESI maintains a variety of pharmacy networks; and

**WHEREAS**, Provider has designated and appointed the PSAO as Provider's "Agent of Pharmacy"; and

**WHEREAS**, Provider, as represented by Agent of Pharmacy, desires to participate in one or more of ESI's pharmacy networks to provide pharmacy services to eligible Members (as defined in Section 1.3), all in accordance with and subject to the terms and conditions set forth in this Agreement and the Provider Manual; and

**WHEREAS**, in accordance with the parties' intentions, and subject to the provisions of Section 7.17: (i) the terms and conditions of this Agreement shall govern Provider's participation in ESI's networks; and (ii) the rate sheets attached hereto as **Exhibit A** shall be the terms for reimbursement in effect between ESI and Provider for the applicable corresponding network(s) or schedule(s) (any rate sheet not replaced herein may, at ESI's sole discretion, remain in full force and effect subject to the terms and conditions of this Agreement); all as of the Effective Date (as defined in Section 1.2) of this Agreement.

**NOW, THEREFORE**, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, ESI and Provider hereby agree as follows:

## TERMS AND CONDITIONS

1.  **DEFINITIONS.** As used in this Agreement, and as set forth in the Provider Manual, each of the following terms (and the plural thereof, when appropriate) shall have the meaning set forth herein, except where the context makes it clear that such meaning is not intended:

    1.1  **"Affiliate"** means, as to either party: (a) any division of a party other than the division(s) with direct responsibility for carrying out the party's obligations under this Agreement, and (b) any corporation or other entity which, directly or indirectly, through one or more intermediaries, controls (i.e., possesses, directly or indirectly, the power to direct or cause the direction of the management and policies of an entity, whether

THIS DOCUMENT CONTAINS CONFIDENTIAL INFORMATION PROTECTED FROM PUBLIC DISCLOSURE UNDER 5 U.S.C. § 552 (b).

PLEASE READ THE FULL "FOIA NOTICE" ON THE SIGNATURE PAGE AND/OR THE FIRST PAGE OF THIS DOCUMENT.

4089773.v1

Contract Number: NCM437425

Version Number: 2

21 of 38

without charge to ESI, any of Provider's medical, business, financial, and administrative records, including prescription records, all books, contracts, medical records, and patient care documentation; original prescriptions, which if older than three (3) years may be electronic if permitted by law; signature logs, which may be electronic if permitted by law (or other evidence allowed by ESI as set forth in the Provider Manual); wholesaler, manufacturer and distributor purchase records, which shall not include actual costs of acquiring or dispensing drugs or supplies unless ESI has a compelling reason to request such information; prescriber information; patient profiles; and such other records and information relating to Covered Medications provided to Members or performance under this Agreement, as may be required by ESI from time to time as further described in the Provider Manual.

2.12.b **Audit Appeals**. The obligations of the Provider and the procedure and guidelines for appealing audit results shall be as set forth in the Provider Manual.

2.13 **Disaster Planning**. Provider agrees that it shall cooperate and coordinate with ESI in implementing any disaster planning efforts undertaken by ESI to ensure that Members receive continuous care, including continued provision of prescription medications together with Covered Medications to Members, in the event of any Force Majeure (as described in Section 7.6 of this Agreement).

2.14 **Counterfeit Reporting**. Provider agrees that it shall cooperate and coordinate with ESI in implementing any counterfeit identification, investigation, tracking and reporting efforts undertaken by ESI. Provider must notify ESI in writing if it becomes aware that any counterfeit drugs have been provided to Members by Provider. Further, Provider represents and warrants (for itself and on behalf of its Pharmacies) that it (and its Pharmacies) purchases prescription drugs and supplies only from reputable wholesalers and/or manufacturers in accordance with the prevailing industry standards.

3. **PAYMENT FOR COVERED MEDICATIONS; PROVIDER CHARGES; INCORRECT PAYMENTS**.

    3.1 **Generally**.

    3.1.a **Payment for Covered Medications**. Subject to Section 3.1.c, for services performed in accordance with the terms and conditions of this Agreement, ESI shall pay Provider the rates as set forth in the applicable rate sheet(s), attached hereto and incorporated herein by this reference, less the applicable Copayment. Except for Copayments, Provider shall look solely to ESI for payment for Covered Medications and other covered services provided to Members pursuant to this Agreement and not to Sponsor. Approved claims for Covered Medications shall be paid in accordance with federal or state law or on average of thirty (30) days from the date ESI determines the Provider has submitted a "complete claim" to ESI. For purposes of this Agreement, "complete claim" shall mean that a claim for Covered Medications has been properly submitted to ESI in accordance with the terms and conditions of this Agreement and the Provider Manual, which ESI determines does not require additional information or substantiation from Provider or Pharmacy, a third party or further review by ESI. Additional information or rejected or disputed claims must be submitted or resubmitted, as applicable, by Provider within thirty (30) days of the request for additional information, initial rejection or dispute. ESI may deny payment for any claim not submitted within this time period. Further, ESI may refuse to pay any claim or may reverse payment of any claim that is not submitted in accordance with the terms and conditions of this Agreement. ESI will comply with all provisions related to payment for Covered Medications set forth in the Provider Manual.

    3.1.b **Provider Charges**. Provider (or its Pharmacy(ies), as the case may be) shall be solely responsible for expenses, costs, charges and fees relating to transmitting claims or other online activities or information to ESI or its designee. Further, for every transaction a Provider (or its Pharmacy(ies)) transmits to ESI, ESI shall charge such Provider a service fee of up to an average of $0.30 per transaction. Such service fee shall be immediately due and owing to ESI and ESI shall have the right to deduct such outstanding transaction fees from any amounts payable to

THIS DOCUMENT CONTAINS CONFIDENTIAL INFORMATION PROTECTED FROM PUBLIC DISCLOSURE UNDER 5 U.S.C. § 552 (b).

PLEASE READ THE FULL "FOIA NOTICE" ON THE SIGNATURE PAGE AND/OR THE FIRST PAGE OF THIS DOCUMENT.

4089773.v1

Provider. For purposes of this Agreement, "transaction" shall mean each payable claim for reimbursement to Provider for a current Member for Covered Medications.

3.1.c **PSAO Central Pay**. Provider acknowledges and agrees that it belongs to the PSAO and has designated the PSAO as Provider's "agent", meaning that Provider has given the PSAO the legal authority to contract and receive payments on Provider's behalf. Provider also acknowledges and agrees that one of the services it receives from its PSAO is centralized payment. Accordingly, Provider hereby authorizes ESI to make consolidated payments to Provider's PSAO for the services rendered by Provider in accordance with this Agreement and hereby agrees to look solely to PSAO for payment and releases ESI from any and all claims, causes of action, liability or other similar requests for payment for such services including non-payment by PSAO; *provided that* ESI has made payment to the PSAO in accordance with the terms and conditions of this Agreement. Further, the parties acknowledge and agree that ESI shall invoice Provider for, or automatically deduct from Provider's future remittance, at ESI's discretion, a nonrefundable processing fee for each PSAO affiliation or affiliation change request.

3.2 **Incorrect Payments**. Any payments made to Provider (or any Pharmacy) (or Agent of Pharmacy on behalf of Provider) in excess of any amount properly determined to be due by ESI may be recovered by ESI from Provider (or any individual Pharmacy) directly, or through the PSAO if central pay, in accordance with the terms of this Agreement. ESI shall notify the Provider (and Pharmacy and/or PSAO, if applicable) in writing of such excess payment(s) and shall have the right to either offset the excess payment amount as provided in Section 2.12 (audit) or require immediate reimbursement from Provider.

4. **TERM AND TERMINATION**.

    4.1 **Term**. Unless earlier terminated as provided in Section 4.2 of this Agreement, the term of this Agreement shall begin on the Effective Date and continue for a period of three (3) years (the "Initial Term"). Thereafter, this Agreement shall automatically renew for successive one (1) year terms (each, a "Renewal Term") unless (i) a party gives at least ninety (90) days prior written notice to the other of such party's intent not to renew this Agreement or (ii) it is earlier terminated as provided in Section 4.2 (the "Initial Term" and any "Renewal Term" shall collectively be referred to herein as the "Term").

    4.2 **Termination**.

    4.2.a **Without Cause**. This Agreement may be terminated by ESI without cause upon at least ninety (90) days written notice to Provider (or such longer period as may be required by law), with such termination effective at the end of such notice period.

    4.2.b **Breach**. In the event a party defaults in the performance of any of its obligations under this Agreement (the "Defaulting Party"), the other party (the "Non-Defaulting Party") may give written notice to the Defaulting Party of such breach. If the Defaulting Party has not cured such breach to the reasonable satisfaction of the Non-Defaulting Party within thirty (30) days after it receives such notice, then the Non-Defaulting Party shall have the right to immediately terminate the Agreement as of the expiration of the 30-day cure period. In addition to all other rights, ESI shall have the right to: (i) suspend any and all obligations of ESI hereunder and in connection with this Agreement; (ii) impose investigation and handling fees as further described in the Provider Manual; and/or (iii) offset against any amounts owed to Provider under this Agreement or under any other agreement between ESI and Provider, which are owing or required to be paid by Provider to ESI. These rights and remedies are in addition to any and all other rights that exist or are available or may exist or be available to ESI pursuant to this Agreement, at law or in equity.

    4.2.c **Immediate Termination**. Notwithstanding the provisions contained in Section 4.2.b, ESI shall have the right to immediately terminate this Agreement as to any Provider upon written notice to that Provider in the event that: (i) Provider ceases to be licensed by the appropriate licensing authority; (ii) Provider submits a fraudulent prescription drug claim or any information in support thereof; (iii) Provider is insolvent, goes into receivership or bankruptcy or any other action is taken on behalf of its creditors; (iv) Provider fails to comply with the claims submission and processing

THIS DOCUMENT CONTAINS CONFIDENTIAL INFORMATION PROTECTED FROM PUBLIC DISCLOSURE UNDER 5 U.S.C. § 552 (b).

PLEASE READ THE FULL "FOIA NOTICE" ON THE SIGNATURE PAGE AND/OR THE FIRST PAGE OF THIS DOCUMENT.

event of any conflict between the terms and conditions of this Agreement and the Provider Manual, the terms of this Agreement shall prevail.

7.4 **Amendment**. Unless prohibited or modified by existing law, ESI may amend any term, part or provision of this Agreement, including without limitation, any exhibits, requirements for participation, schedules, amendments, or addenda (including an amendment required due to a change in law, rule or regulation), by giving written notice to Provider at least twenty (20) calendar days prior to the Effective Date of the amendment ("Notice Period"). Provider shall be deemed to have accepted such amendment in the event if fails to provide written notice of its objection to ESI prior to the expiration of the Notice Period. If Provider continues to submit claims after the effective date of any proposed amendment, then such amendment will be deemed approved and accepted by Provider as if Provider had given its express written consent thereto, and such amendment shall automatically become a part of this Agreement... In the event Provider rejects such amendment in accordance herewith, then Provider may terminate this Agreement by giving written notice of such election to ESI on or before the expiration of the Notice Period, and such termination shall be effective ninety (90) days from the expiration of the Notice Period. In the event Provider rejects such amendment but does not terminate this Agreement on or before the expiration of the Notice Period, then the amendment will be deemed approved and accepted by Provider as if Provider had given its express written consent thereto, and such amendment shall automatically become a part of this Agreement and take effect as of the expiration of the Notice Period. Notwithstanding the foregoing, and only to the extent a signature is required or requested by ESI, the parties acknowledge and agree that any contract document, including, but not limited to, rate exhibits, schedules, letters of agreement, etc., proposed by ESI and executed by Provider hereafter shall automatically become incorporated into this Agreement without the necessity of a formal amendment.

7.5 **Assignment**. No part of this Agreement may be assigned by Provider without ESI's prior written consent. Provider acknowledges and agrees that ESI, without consent of Provider, may assign all or any part of this Agreement and/or ESI's rights, privileges or duties under this Agreement.

7.6 **Force Majeure**. Any party's delay in, or failure of, performance under this Agreement shall be excused where such delay or failure is the result of causes that are beyond the reasonable control of the affected party, including acts of God (e.g., nature, fire, flood, etc.), terrorism, war, civil disturbance, court order, governmental intervention, epidemic, pandemic, failures or fluctuations in electrical power, heat, light, air conditioning, computer, software, communications, transmission or mechanical failure, work stoppage, delays or failure to act, or other catastrophe beyond a party's reasonable control. In such an event, the parties will use commercially reasonable efforts to resume performance as soon as reasonably possible under the circumstances giving rise to the party's failure to perform. Both ESI and Provider will use joint communication and resources to assist the other party in the event of a Force Majeure.

7.7 **Headings**. The article and section headings contained in this Agreement are for convenience only and will in no manner be construed as part of this Agreement.

7.8 **Governing Law**. This Agreement shall be construed and governed in all respects according to the internal laws in the State of Missouri, without regard to conflict of law principles. Notwithstanding the foregoing sentence, solely with respect to services rendered in the state of New York under this Agreement to any Member of any Prescription Drug Program offered by a Sponsor that is certified as a managed care organization under Article 44 of the New York State Public Health Law, this Agreement shall be construed and governed in all respects according to the internal laws in the State of New York, without regard to conflict of law principles.

7.9 **Waiver**. No waiver of a breach of any covenant or condition shall be construed to be a waiver of any subsequent breach. No act, delay, or omission done, suffered, or permitted by the parties shall be deemed to exhaust or impair any right, remedy, or power of the parties hereunder.

7.10 **Severability**. Should any provision of this Agreement be held or ruled unenforceable or ineffective under the law, such a ruling will in no way affect the validity or enforceability of any other clause or provision contained herein.

THIS DOCUMENT CONTAINS CONFIDENTIAL INFORMATION PROTECTED FROM PUBLIC DISCLOSURE UNDER 5 U.S.C. § 552 (b).

PLEASE READ THE FULL "FOIA NOTICE" ON THE SIGNATURE PAGE AND/OR THE FIRST PAGE OF THIS DOCUMENT.

4089773.v1

Contract Number: NCM437425

Version Number: 2

27 of 38

- 7.11 **Non-Competition**. Provider agrees during the Term of this Agreement and for a period of one (1) year thereafter it will not use any of the information it obtains pursuant to this Agreement or as a result of providing services hereunder, to its benefit or for the benefit of any of its affiliates or Pharmacies, including to solicit any of the Sponsors for which Provider provided services to Members of such Sponsors during the Term of this Agreement.

- 7.12 **Dispute Resolution**. Except as provided herein, prior to either party pursuing any litigation in connection with this Agreement, both parties agree to meet in good faith to resolve any claim or controversy ("Claim"), whether under federal or state statutory or common law, brought by either ESI or the Provider against the other, or against the employee, members, agents or assigns of the other, arising from or relating in any way to the interpretation or performance of this Agreement. The aggrieved party shall notify the other party of its Claim providing sufficient detail to permit the other party to respond. The parties agree to meet and confer in good faith to resolve any Claims that may arise under this Agreement for a period of not less than thirty (30) days. In the event the parties cannot resolve any Claims pursuant to Good Faith Discussions and the minimum 30-day period has been met, then the aggrieved party may end discussions with the other party by providing written notice to the other party of its intent to cease discussions. Thereafter, the parties may proceed to litigation. Good Faith Discussion and the 30-day notice period do not apply to Claims by either party solely seeking immediate injunctive relief. The prevailing party on any Claim(s) seeking injunctive relief relating to the term or termination of this Agreement shall be entitled to its reasonable attorneys' fees and costs. All litigation between the parties arising out of or related in any way to the interpretation or performance of the Agreement shall be litigated in the U.S. District Court for the Eastern District of Missouri, or, as to those lawsuits to which the Federal Court lacks jurisdiction, before a court located in St. Louis County, Missouri. The parties agree that Claims shall not be consolidated or coordinated in any action with the Claim of any other individual or entity. Other than as expressly permitted by applicable law, no Claim or other dispute may be litigated on a coordinated, class, mass, or consolidated basis. No Claim may be brought as a private attorney general.

- 7.13 **Counterparts**. This Agreement may be executed in one or more counterparts, each of which will be deemed an original and together will constitute one and the same Agreement. Facsimile execution and delivery of this Agreement is legal, valid and binding execution and delivery for all purposes.

- 7.14 **Incorporation of Recitals**. The recitals are hereby incorporated into and made a part of this Agreement.

- 7.15 **Survival**. Notwithstanding anything herein to the contrary, all provisions intended to survive the expiration or termination of this Agreement, including the Provider Manual, shall survive such expiration or termination for any reason.

- 7.16 **Incorporation of NY Standard Clauses**. As required by the New York State Department of Health, solely with respect to services rendered in the state of New York under this Agreement to any Member of any Prescription Drug Program offered by a Sponsor that is certified as a managed care organization under Article 44 of the New York Public Health Law, the New York State Department of Health Standard Clauses for Managed Care Provider/IPA Contracts ("NY Standard Clauses"), as set forth in Appendix 1, shall be and are expressly incorporated and adopted herein by reference. Solely with respect to the same services, to the extent of any inconsistency between the NY Standard Clauses and other provisions of this Agreement, the provision of the NY Standard Clauses shall control, except to the extent applicable law requires otherwise and/or to the extent a provision of this Agreement exceeds the minimum requirements of the NY Standard Clauses.

- 7.17 **Transition**. The parties agree that Medco Health Solutions, Inc. and its subsidiaries (collectively, "MHS") shall be a party to this Agreement. Any pharmacy agreement including all amendments, schedules and the Provider Manual in effect between MHS and Provider as of the Effective Date (collectively, the "MHS Pharmacy Agreement") shall remain in effect with respect to each MHS Sponsor covered under the MHS Pharmacy Agreement as of the Effective Date until such time as ESI transitions such MHS Sponsor to this Agreement and/or one or more of the rate sheets generally known as Exhibit A, which shall be determined in a commercially reasonable manner by ESI in its sole discretion. Upon transition of a MHS Sponsor to this Agreement, the MHS Pharmacy Agreement shall no longer apply with respect to such transitioned MHS

THIS DOCUMENT CONTAINS CONFIDENTIAL INFORMATION PROTECTED FROM PUBLIC DISCLOSURE UNDER 5 U.S.C. § 552 (b).

PLEASE READ THE FULL "FOIA NOTICE" ON THE SIGNATURE PAGE AND/OR THE FIRST PAGE OF THIS DOCUMENT.

4089773.v1

Contract Number: NCM437425

Version Number: 2

29 of 38

**IN WITNESS WHEREOF**, the parties have executed and entered into this Agreement as of the date set forth below.

| | |
|---|---|
| **HEALTH MART ATLAS, LLC AS ATTORNEY-IN-FACT ON BEHALF OF ITS PARTICIPATING PHARMACIES** | **EXPRESS SCRIPTS, INC.** |
| Signature: -SEE BELOW- | Signature: -SEE BELOW- |
| Printed Name: -SEE BELOW- | Printed Name: -SEE BELOW- |
| Title: -SEE BELOW- | Title: -SEE BELOW- |
| Date: -SEE BELOW- | Date: -SEE BELOW- |

**DIVERSIFIED IPA (NY), INC.**

Signature: -SEE BELOW-

Printed Name: -SEE BELOW-

Title: -SEE BELOW-

Date: -SEE BELOW-

**THIS PAGE IS INTENTIONALLY NOT EXECUTED.** The PSAO has negotiated this Agreement on behalf of its Providers. Each Provider is bound by, and has executed a copy of, **Schedule 2** of the PSAO Services Agreement, granting the PSAO the legal right and authority to contract on the Provider's behalf and to bind the Provider to such agreements, including this Agreement. Accordingly, each Provider is bound by the terms and conditions of this Agreement as if they each individually executed this Agreement.

**Please Fax <u>Entire Document</u> to: 877.387.5800**

FOIA NOTICE: This document contains Express Scripts, Inc. proprietary information and/or data. Recipient, by accepting this document, agrees that it will not duplicate, use, or disclose-in whole or in part-this document, or the information contained therein, or any part thereof to others for any other purpose except as specifically authorized in writing by Express Scripts, Inc. EXEMPT FROM PUBLIC DISCLOSURE: Information contained herein is confidential information of Express Scripts, Inc. and is exempt from public disclosure under 5 U.S.C. §552(b). Do not disclose outside of the recipient organization of the United States Government.

NO ALTERATIONS TO THIS DOCUMENT SHALL BE BINDING UNLESS INITIALED BY DULY AUTHORIZED REPRESENTATIVES OF PROVIDER AND ESI.

THIS DOCUMENT CONTAINS CONFIDENTIAL INFORMATION PROTECTED FROM PUBLIC DISCLOSURE UNDER 5 U.S.C. § 552 (b).

PLEASE READ THE FULL "FOIA NOTICE" ON THE SIGNATURE PAGE AND/OR THE FIRST PAGE OF THIS DOCUMENT.

4089773.v1