UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

OSTERHAUS PHARMACY, INC., et al.,

                    Plaintiffs,

      v.

EXPRESS SCRIPTS, INC.,

                    Defendant.

CASE NO. 2:24-cv-00039-RAJ

**AGREEMENT REGARDING DISCOVERY OF ELECTRONICALLY STORED INFORMATION AND [PROPOSED] ORDER**

The parties hereby stipulate to the following provisions regarding the discovery of electronically stored information ("ESI") in this matter:

**A.      General Principles**

1.      An attorney's zealous representation of a client is not compromised by conducting discovery in a cooperative manner. The failure of counsel or the parties to litigation to cooperate in facilitating and reasonably limiting discovery requests and responses raises litigation costs and contributes to the risk of sanctions.

2.      As provided in LCR 26(f), the proportionality standard set forth in Fed. R. Civ. P. 26(b)(1) must be applied in each case when formulating a discovery plan. To further the application of the proportionality standard in discovery, requests for production of ESI and related

responses should be reasonably targeted, clear, and as specific as possible. This agreement is intended to assist the parties in identifying relevant, responsive information that has been stored electronically and is proportional to the needs of the case. The agreement does not supplant the parties' obligations to comply with Fed. R. Civ. P. 34.

**B.    ESI Disclosures**

Within 30 days of entry of this Order, or at a later time if agreed to by the parties, each party shall disclose:

1.    <u>Custodians.</u> The custodians most likely to have discoverable ESI in their possession, custody, or control. The custodians shall be identified by name, title, connection to the instant litigation, and the type of the information under the custodian's control.

2.    <u>Non-custodial Data Sources.</u> A list of non-custodial data sources (*e.g.*, shared drives, servers), if any, likely to contain discoverable ESI.

3.    <u>Third-Party Data Sources.</u> A list of third-party data sources, if any, likely to contain discoverable ESI (*e.g.*, third-party email providers, mobile device providers, cloud storage) and, for each such source, the extent to which a party is (or is not) able to preserve information stored in the third-party data source.

4.    <u>Inaccessible Data.</u> A list of data sources, if any, likely to contain discoverable ESI (by type, date, custodian, electronic system or other criteria sufficient to specifically identify the data source) that a party asserts is not reasonably accessible under Fed. R. Civ. P. 26(b)(2)(B).

**C.    ESI Discovery Procedures**

1.    <u>On-site inspection of electronic media.</u> Such an inspection shall not be required absent a demonstration by the requesting party of specific need and good cause or by agreement of the parties.

2.      Search methodology. The parties shall timely confer to attempt to reach agreement on appropriate search terms and queries, file type and date restrictions, data sources (including custodians), and other appropriate computer- or technology-aided methodologies (the "Search Methodology"), before any such effort is undertaken. The parties shall continue to cooperate in revising the appropriateness of the Search Methodology.

a.      Prior to running searches:

i.      The producing party shall disclose the data sources (including custodians), search terms and queries, any file type and date restrictions, and any other methodology that it proposes to use to locate ESI likely to contain responsive and discoverable information. The producing party may provide unique hit counts for each search query.    To the extent that a producing party seeks to use any advanced technological solutions to remove documents from human analysis (i.e., Technology Assisted Review ("TAR") or Artificial Intelligence ("AI")), the party shall disclose to the receiving party the parameters and validation of the proposed usage.

ii.      After disclosure, the parties will engage in a meet and confer process regarding additional terms sought by the receiving party, TAR parameters, or TAR validation.

iii.      The following provisions apply to search terms / queries of the requesting party. Focused terms and queries should be employed; broad terms or queries, such as product and company names, generally should be avoided. A conjunctive combination of multiple words or phrases (*e.g.*, "computer" and "system") narrows the search and shall count as a single search term. A disjunctive combination of multiple words or phrases (*e.g.*, "computer" or "system") broadens the search, and thus each word or phrase shall count as a separate search term

unless they are variants of the same word. The producing party may identify each search term or query returning overbroad results demonstrating the overbroad results and a counter proposal correcting the overbroad search or query.

**Plaintiffs' Proposed C.2.c.**

*c.    Upon reasonable request, a party shall disclose information relating to network design, the types of databases and other structured data, database and structured data dictionaries, the access control list and security access logs and rights of individuals to access the system and specific files and applications, the ESI document retention policy, organizational chart for information systems personnel, or the backup and systems recovery routines, including, but not limited to, tape rotation and destruction/overwrite policy.*

**Defendant's Proposed C.2.c.**

*c.    After reviewing the data produced and upon a showing of good cause, a party may request and the parties shall meet and confer on the need to disclose information relating to network design, the types of databases and other structured data, database and structured data dictionaries, the access control list and security access logs and rights of individuals to access the system and specific files and applications, the ESI document retention policy, organizational chart for information systems personnel, or the backup and systems recovery routines, including, but not limited to, tape rotation and destruction/overwrite policy.*

AGREEMENT REGARDING DISCOVERY OF ELECTRONICALLY
STORED INFORMATION AND [PROPOSED] ORDER                    PAGE - 4
(Case No. 2:24-CV-00039-RAJ)

1    **Plaintiffs' Proposed C.2.d.**

2          *d.    Unsearchable Documents.    Documents for which text-based search*

3    *technologies are fundamentally ineffective, such as videos, images, hard copy documents, or*

4    *documents that contain too little text must be reviewed without culling by the Search*

5    *Methodology. Should a producing party believe that reviewing such Unsearchable Documents*

6    *is overly burdensome, the parties shall meet and confer to determine the proper methodology to*

7    *identify and produce Unsearchable Documents.*

8

9    **Defendant's Proposed C.2.d.**

10          *d.    Unsearchable Documents. Documents that are required to be reviewed*

11    *pursuant to the Search Methodology and for which text-based search technologies are*

12    *fundamentally ineffective, such as videos, images, hard copy documents, or documents that*

13    *contain too little text must be reviewed without culling by the Search Methodology. Should a*

14    *producing party believe that reviewing such Unsearchable Documents is overly burdensome,*

15    *the parties shall meet and confer to determine the proper methodology to review Unsearchable*

16    *Documents.*

17

18          3.    Format.

19          a.    ESI will be produced to the requesting party with searchable text, in a

20    format to be decided between the parties. Acceptable formats include, but are not limited to, native

21    files, multi-page TIFFs (with a companion OCR or extracted text file), single-page TIFFs (only

22    with load files for e-discovery software that includes metadata fields identifying natural document

23    breaks and also includes companion OCR and/or extracted text files), and searchable PDF.

24

25    AGREEMENT REGARDING DISCOVERY OF ELECTRONICALLY
      STORED INFORMATION AND [PROPOSED] ORDER                    PAGE - 5
26    (Case No. 2:24-CV-00039-RAJ)

b. Unless otherwise agreed to by the parties, files that are not easily converted to image format, such as spreadsheet, database, presentation, audio, video, and drawing files, will be produced in native format. Documents produced natively shall be accompanied by a Bates-numbered placeholder TIFF image stating "Document Produced Natively." The corresponding load file shall include NativeFileLink information for each native file that is produced.

c. Each document image file shall be named with a unique number (Bates Number). File names should not be more than twenty characters long or contain spaces. When a text-searchable image file is produced, the producing party must preserve the integrity of the underlying ESI, *i.e.*, the original formatting, the metadata (as noted below) and, where applicable, the revision history.

d. If a document is more than one page, the unitization of the document and any attachments and/or affixed notes shall be maintained as they existed in the original document.

e. The parties shall produce their information in the following format: single-page images and associated multi-page text files containing extracted text or with the software load files listed in Exhibit 2. The full text of each electronic document shall be extracted ("Extracted Text") and produced in a text file. The Extracted Text shall be provided in searchable ASCII text format (or Unicode text format if the text is in a foreign language) and shall be named with a unique Bates Number (*e.g.*, the unique Bates Number of the first page of the corresponding production version of the document followed by its file extension).

f. To the extent that a document contains tracked changes or comments, speaker notes, or hidden text, and may be produced as a TIFF under this protocol, the document should be imaged showing tracked changes and comments, speaker notes, and any other hidden text. The extracted text shall include all non-privileged or protected text from tracked changes

and comments, speaker notes, and any other hidden text. The receiving party may request that such documents be produced in native format in addition to TIFF format.

g.    To the extent documents were password protected at the time of collection, prior to electronic search, review, and production, the producing party shall take reasonable efforts to remove the password protection. If there are potentially responsive password protected documents, the password for which the producing party has been unable, after reasonable efforts, to locate, the parties shall meet and confer.

h.    Objects embedded in documents shall, when possible, be extracted and produced as separate documents. The producing party will make reasonable and good faith efforts to treat such extracted embedded documents like attachments to the document (with the exception of image logo files in emails which shall not be extracted or produced). Embedded documents will be produced following the parent with a continuous Bates range.

i.    <u>Modern Attachments.</u> A Modern Attachment is a hyperlink in a document that, upon selection, sends a user to another document in a location accessible on the producing party's network (e.g. OneDrive). To the extent a response to discovery requires production of these files, the parties agree to meet and confer regarding the process, collection, search, and form of production of Modern Attachments. If the parties are unable to agree as to the treatment of Modern Attachments after meeting and conferring in good faith, the parties may notify the Court of their unresolved dispute(s) and seek resolution by the Court.

j.    <u>Compressed or Container Files.</u> Compression file types (e.g., .CAB, .GZ, RAR. .ZIP), shall be decompressed to the lowest possible compression resulting in individual folders and/or files. Original compression files and container files need not be produced, provided the responsive content files are produced in accordance with the specifications of this Order.

        k.    <u>Appearance, Content and Reasonably Usable</u>. If a party identifies imaging or formatting problems in a produced document or documents or if the form of production results in a document that is not reasonably usable, the parties shall meet and confer in an attempt to resolve any outstanding problems.

        l.    <u>Color and Low-Resolution Images</u>. If a requesting party finds the black and white version of a document produced in non-Native Format insufficient, the requesting party may request that the producing party provide a color and/or higher resolution image, as appropriate. The producing party will not unreasonably deny such a request and may choose to respond by providing the Native Format version of the document or any other format consistent with this ESI Protocol's specifications. If the parties cannot come to an agreement regarding whether a document must be produced in color, the good cause standard will govern the dispute. However, the requesting party does not have to make a good cause showing when it initially requests the document in color; instead, the requesting party may simply identify the document. If a producing party converts a document to color image in response to a request from a requesting party, the producing party shall do so in JPEG, TIFF or such other format as agreed with the requesting party.

        4.    <u>De-duplication.</u> The parties may de-duplicate their ESI production across custodial and non-custodial data sources after disclosure to the requesting party, and the duplicate custodian information removed during the de-duplication process tracked in a duplicate/other custodian field in the database load file.

**Plaintiffs' Proposed C.5.**

   ***Email Threading. The parties may use analytics technology to identify email threads for purposes of efficiency in reviewing documents, but may not use thread suppression to exclude email from its production.***

**Defendant's Proposed C.5.**

   ***Email Threading. The parties may use analytics technology to identify email threads and need only produce the unique most inclusive copy and related family members and may exclude lesser inclusive copies. Upon reasonable request, the producing party will produce a less inclusive copy.***

   6.    <u>Metadata fields.</u> If the requesting party seeks metadata, the parties agree that only the following metadata fields need be produced, and only to the extent it is reasonably accessible and non-privileged: document type; custodian and duplicate custodians (or storage location if no custodian); author/from; recipient/to, cc and bcc; title/subject; email subject; file name when collected; file size; file extension when collected; original file path; date and time created, sent, modified and/or received; and hash value. The list of metadata type is intended to be flexible and may be changed by agreement of the parties, particularly in light of advances and changes in technology, vendor, and business practices.

   7.    <u>Hard-Copy Documents.</u> If the parties elect to produce hard-copy documents in an electronic format, the production of hard-copy documents will include a cross-reference file that indicates document breaks and sets forth the custodian or custodian/location associated with each produced document. Hard-copy documents will be scanned using Optical Character Recognition

technology and searchable ASCII text files will be produced (or Unicode text format if the text is in a foreign language), unless the producing party can show that the cost would outweigh the usefulness of scanning (for example, when the condition of the paper is not conducive to scanning and will not result in accurate or reasonably useable/searchable ESI). Each file will be named with a unique Bates Number (*e.g.*, the unique Bates Number of the first page of the corresponding production version of the document followed by its file extension).

**Plaintiffs' Proposed C.8.**

*8.    Modern Communications. The Parties recognize that various Modern Communications platforms may contain relevant or responsive information that may be addressed in the production of ESI, however, because of the potential diverse technical environments and tools available to each Party, the Parties agree to meet and confer to determine the proper methodology for collection, processing, searching, redacting, and producing information contained in Modern Communications platforms including the contents of any applicable privilege.    Modern Communications shall be defined as communications methods other than email, such as Channel-based communications (e.g., Slack, Teams), Text messages / mobile messages (e.g., SMS, MMS, iMessage, Whatsapp, Telegram), Synchronous chat (e.g., Teams, Jabber, Google Chat), Collaboration tools (e.g., SharePoint, wikis), Ticketing / workflow (e.g., JIRA), Social media (e.g., Twitter, Facebook, Instagram), communications in structured data applications (e.g. Salesforce), and Online meetings (e.g., Zoom, Teams, Webex).*

**Defendant's Proposed C.8.**

*[Defendant proposes to omit the proposed section]*

**D.    Preservation of ESI**

The parties acknowledge that they have a common law obligation, as expressed in Fed. R. Civ. P. 37(e), to take reasonable and proportional steps to preserve discoverable information in the party's possession, custody, or control. With respect to preservation of ESI, the parties agree as follows:

1.    Absent a showing of good cause by the requesting party, the parties shall not be required to modify the procedures used by them in the ordinary course of business to back-up and archive data; provided, however, that the parties shall preserve all discoverable ESI in their possession, custody, or control.

2.    The parties will supplement their disclosures in accordance with Fed. R. Civ. P. 26(e) with discoverable ESI responsive to a particular discovery request or mandatory disclosure where that data is created after a disclosure or response is made (unless excluded under Sections (D)(3) or (E)(1)-(2)).

3.    Absent a showing of good cause by the requesting party, the following categories of ESI need not be preserved:

       a.    Deleted, slack, fragmented, or other data only accessible by forensics.

       b.    Random access memory (RAM), temporary files, or other ephemeral data that are difficult to preserve without disabling the operating system.

       c.    On-line access data such as temporary internet files, history, cache, cookies, and the like.

       d.    Unless otherwise required to be produced by this Order, data in metadata

fields that are frequently updated automatically, such as last-opened dates (see also Section (E)(5)).

e.    Back-up data that are duplicative of data that are more accessible elsewhere.

**Plaintiffs' Proposed D.3.f.**

    *f.*    *Server, operating system or network logs.*

**Defendant's Proposed D.3.f.**

    *f.*    *Server, system or network logs.*

**Plaintiffs' Proposed D.3.g.**

    *g.*    *Data remaining from systems no longer in use or reasonably accessible that is unintelligible on the systems in use.*

**Defendant's Proposed D.3.g.**

    *g.*    *Data remaining from systems no longer in use that is unintelligible on the systems in use.*

h.    Electronic data (e.g., email, calendars, contact data, and notes) sent to or from mobile devices (e.g., iPhone, iPad, Android devices), provided that a copy of all such electronic data is automatically saved in real time elsewhere (such as on a server, laptop, desktop computer, or "cloud" storage).

**E.    Privilege**

    1.

1  **Plaintiffs' Proposed E.1.**

2       *A producing party shall create a privilege log of all documents fully withheld from*

3  *production on the basis of a privilege or protection, unless otherwise agreed or excepted by this*

4  *Agreement and Order. Privilege logs shall include a unique identification number for each*

5  *document and the basis for the claim (attorney-client privileged or work-product protection).*

6  *For ESI, the privilege log may be generated using available metadata, including*

7  *author/recipient or to/from/cc/bcc names; the subject matter or title; and date created. Should*

8  *the available metadata provide insufficient information for the purpose of evaluating the*

9  *privilege claim asserted, the producing party shall include such additional information as*

10 *required by the Federal Rules of Civil Procedure. Privilege logs will be produced to all other*

11 *parties no later than 30 days after delivering a production. For each entry on the privilege log,*

12 *attorneys who acted in a legal capacity must be identified as attorneys, such as by marking*

13 *them with an asterisk or "ESQ" or some other marker. The privilege log must include the*

14 *name, title, and company affiliation for each listed individual. Upon request, a producing party*

15 *must make commercially reasonable efforts to produce the names of all members of a*

16 *producing party's email listserv or group (including last name, first name, and, as applicable,*

17 *any asterisk or "ESQ" or some other marker) for any listserv or group that is identified as a*

18 *recipient to items included within a privilege log.*

19

20 **Defendant's Proposed E.1.**

21      *A producing party shall create a privilege log of all documents fully withheld from*

22 *production on the basis of a privilege or protection, unless otherwise agreed or excepted by this*

23 *Agreement and Order. Privilege logs shall include a unique identification number for each*

24

*document and the basis for the claim (attorney-client privileged or work-product protection).*
*For ESI, the privilege log may be generated using available metadata, including*
*author/recipient or to/from/cc/bcc names; the subject matter or title; and date created. Should*
*the available metadata provide insufficient information for the purpose of evaluating the*
*privilege claim asserted, the producing party shall include such additional information as*
*required by the Federal Rules of Civil Procedure. Privilege logs will be produced to all other*
*parties no later than 30 days before the deadline for filing motions related to discovery unless*
*an earlier deadline is agreed to by the parties. For each entry on the privilege log, attorneys*
*must be identified as attorneys, such as by marking them with an asterisk or "ESQ" or some*
*other marker. The privilege log must include the name, title, and company affiliation for each*
*listed individual. Upon request, a producing party must make commercially reasonable efforts*
*to produce the names of all third-party members of a producing party's email listserv or group*
*(including last name, first name, and, as applicable, any asterisk or "ESQ" or some other*
*marker) for any listserv or group that is identified as a recipient to items included within a*
*privilege log.*

2.      Redactions need not be logged so long as the basis for the redaction is clear on the redacted document. A producing party may redact for relevance only if all the following conditions are met: (1) the document is designated "Highly Confidential – Attorneys' Eyes Only" or "Confidential Health Information" under the operative Protective Order and any subsequent amendments; (2) the redacted information is nonresponsive; (3) the redacted information is irrelevant; and (4) the redacted information would not assist in understanding or providing context for the relevant/responsive portion(s) of the document or document family of which it is a part.

Even if the producing party asserts that the foregoing conditions are met, the receiving party may dispute the redactions and present the dispute for judicial resolution; in any such dispute, the burden of demonstrating that the conditions permitting redaction are met must be borne by the producing party.

3.       With respect to privileged or work-product information generated after the filing of the complaint, parties are not required to include any such information in privilege logs.

4.       Activities undertaken in compliance with the duty to preserve information are protected from disclosure and discovery under Fed. R. Civ. P. 26(b)(3)(A) and (B).

5.       Pursuant to Fed. R. Evid. 502(d), the production of any documents, electronically stored information (ESI) or information, whether inadvertent or otherwise, in this proceeding shall not, for the purposes of this proceeding or any other federal or state proceeding, constitute a waiver by the producing party of any privilege applicable to those documents, including the attorney-client privilege, attorney work-product protection, or any other privilege or protection recognized by law. This Order shall be interpreted to provide the maximum protection allowed by Fed. R. Evid. 502(d). The provisions of Fed. R. Evid. 502(b) do not apply. Nothing contained herein is intended to or shall serve to limit a party's right to conduct a review of documents, ESI or information (including metadata) for relevance, responsiveness and/or segregation of privileged and/or protected information before production. Information produced in discovery that is protected as privileged or work product shall be immediately returned to the producing party.

RESPECTFULLY SUBMITTED AND DATED this 18th day of August, 2025.

TERRELL MARSHALL LAW GROUP
PLLC

By: */s/ Beth E. Terrell*
Beth E. Terrell, WSBA #26759
Email: bterrell@terrellmarshall.com
Amanda M. Steiner, WSBA #29147
Email: asteiner@terrellmarshall.com
Blythe H. Chandler, WSBA #43387
Email: bchandler@terrellmarshall.com
936 N. 34th Street, Suite 300
Seattle, Washington 98103
Telephone: (206) 816-6603


Joseph M. Vanek, *Admitted Pro Hac Vice*
Email: jvanek@sperling-law.com
Paul E. Slater, *Admitted Pro Hac Vice*
Email: pes@sperling-law.com
Phil Cramer, *Admitted Pro Hac Vice*
Email: pcramer@sperling-law.com
Trevor K. Scheetz, *Admitted Pro Hac Vice*
Email: tscheetz@sperling-law.com
Kathryn M. DeLong, *Admitted Pro Hac
Vice*
Email: kdelong@sperling-law.com
SPERLING & SLATER, LLC
55 W. Monroe Street, Suite 3200
Chicago, Illinois 60603
Telephone: (312) 641-3200


Steve D. Shadowen, *Admitted Pro Hac Vice*
Email: steve@hilliardshadowenlaw.com
Nicholas W. Shadowen, *Admitted Pro Hac
Vice*
Email:
nshadowen@hilliardshadowenlaw.com
Kathryn Allen, *Admitted Pro Hac Vice*
Email: kallen@hilliardshadowenlaw.com
Matthew C. Weiner, *Admitted Pro Hac Vice*
Email: matt@hilliardshadowenlaw.com
HILLIARD SHADOWEN LLP

QUINN EMANUEL URQUHART &
SULLIVAN, LLP

By: */s/ Alicia Cobb*
Alicia Cobb, WSBA # 48685
Email: aliciacobb@quinnemanuel.com
Matthew S. Hosen, WSBA #54855
Email: matthosen@quinnemanuel.com
1109 First Avenue, Suite 210
Seattle, Washington 98101
Telephone: (206) 905-7000
Facsimile: (206) 905-7100

Ryan T. Andrews, *Admitted Pro Hac Vice*
Email: ryanandrews@quinnemanuel.com
Michael J. Lyle, *Admitted Pro Hac Vice*
Email: mikelyle@quinnemanuel.com
Michael D. Bonanno, *Admitted Pro Hac
Vice*
Email: mikebonanno@quinnemanuel.com
Jonathan G. Cooper, *Admitted Pro Hac Vice*
Email: jonathancooper@quinnemanuel.com
1300 I Street NW, Suite 900
Washington, D.C. 20005
Telephone: (202) 538-8000

*Attorneys for Defendants*

1717 West Sixth Street, Suite 370
Austin, Texas 78703
Telephone: (855) 344-3298

Mark R. Cuker, *Admitted Pro Hac Vice*
Email: mark@cukerlaw.com
CUKER LAW FIRM
575 Pinetown Rd
P.O. Box 1151
Ft. Washington, Pennsylvania 19034
Telephone: (215) 531-8522

Joshua P. Davis, *Admitted Pro Hac Vice*
Email: jdavis@bm.net
Julie A. Pollock, *Admitted Pro Hac Vice*
Email: jpollock@bm.net
Kyla J. Gibboney, *Admitted Pro Hac Vice*
Email: kgibboney@bm.net
BERGER MONTAGUE PC
505 Montgomery Street, Suite 625
San Francisco, California 94111
Telephone (415) 906-0684

Michael L. Roberts, *Admitted Pro Hac Vice*
Email: mikeroberts@robertslawfirm.us
Erich P. Schork, *Admitted Pro Hac Vice*
Email: erichschork@robertslawfirm.us
Kelly Rinehart, *Admitted Pro Hac Vice*
Email: kellyrinehart@robertslawfirm.us
ROBERTS LAW FIRM US, PC
1920 McKinney Avenue, Suite 700
Dallas, Texas 75204
Telephone: (501) 821-5575

Gary I. Smith, Jr., *Admitted Pro Hac Vice*
Email: gsmith@hausfeld.com
HAUSFELD LLP
600 Montgomery Street, Suite 3200
San Francisco, California 94111
Telephone: (415) 633-1908

Timothy S. Kearns, *Admitted Pro Hac Vice*
Email: tkearns@hausfeld.com
HAUSFELD LLP
1200 17th St. NW, Suite 600

AGREEMENT REGARDING DISCOVERY OF ELECTRONICALLY
STORED INFORMATION AND [PROPOSED] ORDER                    PAGE - 17
(Case No. 2:24-CV-00039-RAJ)

1   Washington, DC 20036
    Telephone: (202) 540-7227
2
    Joshua H. Grabar, *Admitted Pro Hac Vice*
3   Email: jgrabar@grabarlaw.com
    GRABAR LAW OFFICE
4   One Liberty Place
    1650 Market Street, Suite 3600
5   Philadelphia, Pennsylvania 19103
    Telephone: (267) 507-6085
6
7   *Attorneys for Plaintiffs and Proposed Class*

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

**ORDER**

Based on the foregoing, IT IS SO ORDERED.

DATED: _____


_____
The Honorable Richard A. Jones
UNITED STATES DISTRICT JUDGE

## EXHIBIT 1: PRODUCTION SPECIFICATIONS

The following Metadata fields will be produced, to the extent reasonably and technically available[1]:

| Field | Description | Hard Copy Documents | ESI |
|---|---|---|---|
| AllCustodians | This field shall reference the Name(s) of all Custodian(s) who were in possession of a de-duplicated Document. | -- | X |
| AllPaths | Identification of all file paths for de-duplicated Documents. | -- | X |
| Application | Indicates software application that generated the ESI item (e.g., Outlook, Word). | -- | X |
| AttachCount | Populated for parent records and indicates the number of attachments that constitute the whole family (BegAttach to EndAttach). | -- | X |
| AttachFileName | For attachments only, the eDoc File Name, as read from the processing system. | -- | X |
| Author | Author field extracted from the Metadata of a non-Email. | -- | X |
| BCC | BCC or Blind Carbon Copy field extracted from an Email. | -- | X |
| BegAttach | Beginning Bates Number of the first Document in a Document Family range. Documents that are part of Document families (*i.e.*, containing parents and attachments), should receive a value. | -- | X |
| BegBates | Beginning Bates Number. | X | X |
| CC | CC or Carbon Copy field extracted from an Email. | -- | X |

[1] Different ESI platforms assign different names to specific metadata therefore, the field names provided in Exhibit 1 may not reflect the field name for the metadata in responding party's ESI Platform. The metadata fields produced shall be governed by the information contained in the Description column of Exhibit 1.

| Field | Description | Hard Copy Documents | ESI |
|-------|-------------|:---:|:---:|
| Confidential | Confidentiality designation if a Document has been so designated under the Protective Order in this Action; otherwise, blank. | X | X |
| Custodian | Name of the Custodian of the Document Produced. | X | X |
| DateAccessed | The last accessed date of the Document. | -- | X |
| DateCreated | Creation date of a file (mm/dd/yyyy format). | -- | X |
| DateModified | Last modification date (mm/dd/yyyy format). | -- | X |
| DateReceived | Received date of an Email (mm/dd/yyyy format). | -- | X |
| DateSent | Sent date of an Email (mm/dd/yyyy format). | -- | X |
| Doc_Properties[5] | Document exceptions and characteristics extracted during processing (e.g., hidden text, rows, columns, sheets, very hidden sheets, track changes, comments, speaker notes, encrypted/password-protected, etc.). Multiple values should be separated by semicolons. (e.g. Track Changes, Hidden Text; Hidden Rows or Columns; Hidden Sheet; Very Hidden Sheet; Comments; Speaker Notes; Encrypted) | -- | X |
| EndAttach | Beginning or Ending Bates number of the last Document in attachment range in a Document Family range. Documents that are part of Document Families (*i.e.*, containing parents or attachments) should receive a value. | -- | X |
| EndBates | Ending Bates Number. | X | X |

---

[5]    May also be populated as separated metadata fields e.g. HASHIDDENSLIDES, HASSPEAKERNOTES, HASHIDDENCOLUMNS etc.)

| Field | Description | Hard Copy Documents | ESI |
|---|---|---|---|
| CalendarEndDate | End date and time of calendar appointments, voice messages, chats, text message conversations. Format: MM/DD/YYYY HH:MM:SS. | -- | X |
| FileExtension | File extension of Document (.msg, .doc, .xls, etc.). | -- | X |
| FileName | Filename of the original source ESI. | -- | X |
| FilePath | The full path to the file in its original location or the email folder containing the item for the custodian of the document produced. | -- | X |
| FileSize (in bytes) | Size of the file in bytes. | X | X |
| ForeignLanguage | Specifies all languages found in the document to the best of the processing software's ability. | -- | X |
| From | From or Sender field extracted from an Email | -- | X |
| FullText | File path to full text/OCR File. | X | X |
| HASHValue | MD5 or SHA Hash value of the file. | -- | X |
| IsModernAttachment | File is a Modern Attachment. | -- | X |
| Importance | Email importance flag. | -- | X |
| MessageStatus | Status of messages/calls (*i.e.*, Read, Unread, Completed Call, Missed Call, etc.) | -- | X |
| MessageID or ThreadID or ConversationIndex | Unique identification number that indicates the email thread in which an email appears. For instance, the Outlook Message ID assigned by the Outlook mail server, if applicable. | -- | X |
| NativeLink | Path and filename to produced Native Format file. | -- | X |
| PageCount | The number of pages in the file. | X | X |

| Field | Description | Hard Copy Documents | ESI |
|---|---|---|---|
| PaperDocument | User-generated field that will indicate redactions by indicating "Y" where the Document was collected as a Hard Copy Document. Otherwise, blank. | X | -- |
| ProductionVolume | Production volume name or number. | X | X |
| RecordType | To indicate "Email," "Email Attachment," "Loose File," or "Hard Copy." | -- | X |
| Redacted | User-generated field that is populated "Y" where the Document is redacted. Otherwise, blank. | X | X |
| RedactionBasis | User-generated field that is populated with the privilege reason where a Document has been redacted for privilege. | X | X |
| SourceParty | The Responding Party. | X | X |
| CalendarStartDate | Start date and time of calendar appointments, voice messages, chats, text message conversations. Format: MM/DD/YYYY HH:MM:SS. | -- | X |
| Subject | Subject of message or subject of calendar entry. | -- | X |
| TimeZone | The time zone the Document was processed in. | -- | X |
| TimeCreated | Creation time of a file (hh:mm:ss format). | -- | X |
| TimeModified | Last modification time (hh:mm:ss format). | -- | X |
| TimeReceived | Received time of an Email (hh:mm:ss format). | -- | X |
| TimeSent | Time of an Email (hh:mm:ss format). | -- | X |
| Title | Title field extracted from the Metadata of a non-Email. | -- | X |
| To | To or Recipient field extracted from an Email or message level Document | -- | X |

| Field | Description | Hard Copy Documents | ESI |
|-------|-------------|:---:|:---:|
| TrackChanges | (Y/N) Field for documents with track changes | -- | X |

## EXHIBIT 2: LOAD FILE FORMAT FOR ESI

1.      Delimited Text File: A delimited text file (.DAT File) containing the fields listed in **Exhibit 1** should be provided. The delimiters for the file should be Concordance defaults: Comma - ASCII character 20 (¶)

(a) Quote - ASCII character 254 (þ)

(b) Newline - ASCII character 174 (®)

2.      Image Cross-Reference File (.opt): The Opticon cross-reference file is a comma delimited file consisting of six fields per line. There must be a line in the cross-reference file for every image in the database. The format for the file is as follows: ImageID,VolumeLabel,ImageFilePath,DocumentBreak,FolderBreak,BoxBreak,PageCount.

(a) ImageID: The unique designation that Concordance and Opticon use to identify an image. This should be the BegBates Number of the Document.

(b) VolumeLabel: The name of the volume.

(c) ImageFilePath: The full path to the image file.

(d) DocumentBreak: If this field contains the letter "Y," then this is the first page of a Document. If this field is blank, then this page is not the first page of a Document.

(e) FolderBreak: Leave empty.

(f) BoxBreak: Leave empty.

(g) PageCount: Number of pages in the Document.

3.      Sample Data:

(a) PROD00000001, VOL001,E:\100\ PROD00000001.TIF,Y,,2

(b) PROD00000002, VOL001,E:\100\ MT00000002.TIF,,,,

1    (c)  PROD00000003, VOL001,E:\100\ MT00000003.TIF,Y,,,4

2    (d)  PROD00000004, VOL001,E:\100\ MT00000004.TIF,,,,

3    (e)  PROD00000005, VOL001,E:\100\MT00000005.TIF,,,,

4    (f)  PROD00000006, VOL001,E:\100\MT00000006.